1  ERIN M. TOBIN (State Bar No. 234943)
   TRENT W. ORR (State Bar No. 77656)
2  Earthjustice
   426 17th Street
3  Oakland, CA 94612
   Tel: (510) 550-6725
4  Fax: (510) 550-6749
   etobin@earthjustice.org; torr@earthjustice.org

5  *Counsel for Plaintiffs*                    **E-filing**

6

7

8              UNITED STATES DISTRICT COURT        **JSW**
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9               SAN FRANCISCO DIVISION

10

11  CENTER FOR BIOLOGICAL DIVERSITY;  )   **CV  08      3884**
    LOS PADRES FORESTWATCH; SIERRA    )
12  CLUB; DEFENDERS OF WILDLIFE;      )
    CALIFORNIA NATIVE PLANT SOCIETY;  )   **COMPLAINT FOR DECLARATORY**
13  CALIFORNIA WILDERNESS COALITION;  )   **AND INJUNCTIVE RELIEF**
    THE WILDERNESS SOCIETY,           )
14                                    )
                                      )
15             Plaintiffs,            )
                                      )
16        vs.                         )
                                      )
17  UNITED STATES DEPARTMENT OF       )
    AGRICULTURE; EDWARD SCHAFER, in his )
18  official capacity as Secretary of the Department )
    of Agriculture; UNITED STATES FOREST )
19  SERVICE; ABIGAIL KIMBELL, in her official )
    capacity as Chief of the Forest Service; and )
20  RANDY MOORE, in his official capacity as )
    Regional Forester for the Pacific Southwest )
21  Region of the Forest Service,      )
                                      )
22             Defendants.            )
    _____ )

23                    **INTRODUCTION**

24        1.    This case concerns the United States Forest Service's ("Forest Service") revision of

25  land and resource management plans (commonly referred to as "forest plans") that govern nearly

26  every activity that takes place in the four national forests in southern California. These forests

27  encompass 3.5 million acres of forest lands in one of the most biologically diverse regions in the

28  world and are a mecca of outdoor activities for millions of Californians. Expanding populations in

1  southern California's major metropolises, including Los Angeles and San Diego, have put increasing

2  pressure on the region's forest ecosystems through a growing demand for recreational activities,

3  some of which, such as off-road vehicles, have significant adverse effects on environmental

4  resources.  This fire-prone region also is heavily affected by a long history of fire suppression

5  activities.

6        2.     In its most recent attempt at forest planning for these national forests, rather than

7  develop a comprehensive plan to address the myriad activities affecting the health of southern

8  California's forests, the Forest Service instead ignored meaningful protections for environmental

9  resources that are critical for ensuring thriving populations of wildlife and healthy forests, refused to

10  recommend preserving in perpetuity as wilderness the vast majority of the most pristine and natural

11  areas in the southern California forests, and, instead, re-zoned the vast majority of these sensitive

12  areas to allow some of the most damaging and resource intensive activities, such as road building

13  and motorized off-road vehicle recreation.  In the course of doing so, the Forest Service failed to

14  take a hard look at many of the serious environmental consequences of allowing more

15  environmentally damaging activities while at the same time failing to develop meaningful,

16  enforceable forest plan requirements that would prevent, minimize, and mitigate impacts to the

17  forests' diverse flora and fauna.

18        3.     This Complaint alleges that the revised forest plans for the four southern California

19  national forests, associated records of decision, and final environmental impact statement ("FEIS")

20  were promulgated in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701-

21  706, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f.  The Forest

22  Service's promulgation of the forest plans violated these laws through the agency's failure to prepare

23  an adequate environmental impact statement that thoroughly analyzes the effects of the proposed

24  action on environmental resources in the forest planning area, including sensitive species of

25  vegetation and wildlife, and its failure to consider a reasonable range of alternative management

26  approaches.  As to the last factor, the Forest Service failed to analyze alternative ways of addressing

27  fundamental decisions made by forest plans, such as required management standards necessary to

28  limit adverse impacts to forest resources.  The Forest Service's one-size-fits-all approach to its forest

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF        2

1    planning duties under the National Forest Management Act ("NFMA"), 16 U.S.C. § 1604, is not the

2    kind of informed decision-making that NEPA requires and is a procedural violation of that law.

3        4.    To rectify the NEPA violations alleged herein, plaintiffs Center for Biological

4    Diversity, Los Padres ForestWatch, Sierra Club, Defenders of Wildlife, California Native Plant

5    Society, California Wilderness Coalition, and The Wilderness Society request that the Court hold

6    unlawful and set aside the FEIS, records of decisions, and forest plans, declare these documents in

7    violation of NEPA and the APA, enjoin the Forest Service from implementing the forest plans, and

8    order the Forest Service to prepare a legally adequate environmental impact statement and revised

9    forest plans for these forests.

10        5.    Should they prevail, plaintiffs will seek to recover attorneys fees and costs pursuant to

11    the Equal Access to Justice Act, 28 U.S.C. § 2412.

12    **JURISDICTION AND VENUE**

13        6.    Plaintiff brings this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§

14    701-706.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal

15    question) and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-02.

16        7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because plaintiff

17    Sierra Club is incorporated in this district and maintains its headquarters in the County of San

18    Francisco.  This case also is related to two cases pending before the district court for the Northern

19    District of California:  *California Resources Agency, et al. v. U.S. Department of Agriculture, et al.*,

20    No. 08-1185 (N.D.Cal. filed Feb. 28, 2008) and *Center for Biological Diversity, et al. v. U.S. Fish*

21    *and Wildlife Service*, *et al*., No. 08-1278 (N.D.Cal. filed March 5, 2008).

22        8.    Assignment to the San Francisco Division of this judicial district is proper because

23    plaintiff Sierra Club maintains its headquarters in San Francisco.  Civil L.R. 3-2(c).

24    **PARTIES**

25        9.    Plaintiff Center for Biological Diversity ("the Center") is a non-profit conservation

26    organization dedicated to protecting endangered and threatened species and their habitat throughout

27    North America, including California, through science, policy, public education, and the law.  The

28    Center is based in Tucson, Arizona, with California offices in San Francisco, San Diego, Los

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF        3

1  Angeles, and Joshua Tree, and has over 40,000 members nationwide.  The Center pursues its

2  mission by preparing and publishing scientific articles, participating in state and federal

3  administrative proceedings, disseminating educational information through newsletters, alerts, the

4  world-wide web, and media releases, and petitioning and litigating to list numerous birds, fish,

5  amphibians, plants, and insects as threatened or endangered species.

6      10.    Plaintiff Los Padres ForestWatch is a non-profit conservation organization dedicated

7  to protecting and restoring public lands along California's central coast through community

8  involvement, scientific collaboration, innovative field work, and legal advocacy.  Los Padres

9  ForestWatch is a grass-roots watchdog group for the Los Padres National Forest with approximately

10  800 members throughout California.

11      11.    Plaintiff Sierra Club is a nationwide non-profit conservation organization formed in

12  1892, with a mission to explore, enjoy, and protect the wild places of the Earth, to practice and

13  promote responsible uses of the Earth's ecosystems and resources, to educate and enlist humanity in

14  the protection and restoration of the quality of the natural and human environment, and to use all

15  lawful means to carry out those objectives.  Sierra Club has over 700,000 members, approximately

16  80,000 of whom reside in California.  For many years the Sierra Club and its members have

17  advocated for the protection of forest ecosystems throughout California.  These advocacy efforts

18  have included forest mapping and identification of remaining ancient forest areas, lobbying for and

19  achieving funding for numerous forest conservation efforts, and urging protection for imperiled

20  species.

21      12.    Plaintiff Defenders of Wildlife ("Defenders") is a national, non-profit membership

22  organization dedicated to the protection of all native wild animals and plants in their natural

23  communities.  Based in Washington, D.C., and with three offices in California, Defenders has more

24  than 500,000 members nationwide, including over 70,000 in California.  Defenders counts among its

25  priorities ensuring the conservation of wildlife and habitat on federal public lands, with particular

26  emphasis on national forests.  In California, this has translated into years of advocacy for the

27  protection of the four Southern California national forests and the wildlife that call them home, with

28  special concern for preserving habitat for California condors and other highly endangered species.

1    13.    Plaintiff California Native Plant Society ("CNPS") is a non-profit organization whose

2 mission is to increase understanding and appreciation of California's native plants and to conserve

3 them and their natural habitats, through education, science, advocacy, horticulture, and land

4 stewardship.  CNPS is comprised of more than 10,000 laypersons and professional botanists

5 organized into 32 chapters throughout California.

6    14.    Plaintiff California Wilderness Coalition ("CWC") is a non-profit conservation

7 organization dedicating to achieving formal wilderness designation and protection by the state or

8 federal government for California's wild areas.  CWC pursues this objective through legislative

9 campaigns, grass-roots organizing, public education, such as publishing quarterly news journals,

10 guides, and white papers concerning wilderness issues, and, when necessary, legal action.  Most

11 recently, CWC helped pass the Northern California Coastal Wild Heritage Wilderness Act, which

12 protects 275,000 acres of oak woodlands, salmon rivers, and old growth forest.  In addition to other

13 projects, CWC is currently working on wilderness legislation to protect 200,000 acres of desert,

14 chaparral, and oak forest in Riverside County in southern California.

15    15.    Plaintiff The Wilderness Society ("TWS") is a non-profit conservation organization

16 that since 1935 has sought to protect wilderness and inspire Americans to care for wild places

17 through scientific expertise, analysis, advocacy, and, when appropriate, litigation efforts.  To that

18 end, TWS is committed to staving off logging and road building on the nation's more than 58

19 million acres of roadless lands and curbing the environmental damage caused by off-road vehicles.

20 TWS has more than 325,000 members and supporters, many of whom live and recreate in southern

21 California.

22    16.    Plaintiffs have individual members who live in Southern California, regularly visit the

23 national forests throughout Southern California, and intend to continue to use and enjoy the four

24 southern California national forests in the near future.  They use these national forest lands for a

25 variety of purposes, such as scientific study, wildlife observation, photography, hiking, backpacking,

26 fishing, and hunting and intend to continue to do so on an ongoing basis in the future.  Plaintiffs'

27 members derive recreational, spiritual, professional, aesthetic, educational, and other benefits and

28 enjoyment from these activities.

17.     Many of plaintiffs' members regularly visit both wilderness and non-wilderness roadless areas in the southern California national forests and enjoy these areas for their unique biodiversity, naturalness, and incomparable solitude.  Plaintiffs' members also frequently visit areas of the national forests in southern California that are known for supporting relatively high concentrations of endangered, threatened, candidate, proposed, and sensitive species, and/or the habitat of such species, including sensitive species of native vegetation.  Plaintiffs and their members have a procedural interest in influencing national forest management through participation in the development of meaningful, substantive forest plans as prescribed by the NFMA and in the development of comprehensive environmental analyses required by NEPA.

18.     The above-described interests of plaintiffs and their members have been and are suffering, and will continue to suffer, irreparable injury as a result of the Forest Service's adoption of the southern California forest plans and the agency's failure to comply with NEPA.  For example, the forest plans re-zone the vast majority of roadless areas such that it will be easier for activities that diminish plaintiffs' members enjoyment of each forest to occur, including road-building and the intrusion of off-road vehicles.  The forest plans thus diminish the ability of plaintiffs' members to find diverse areas in which to recreate that possess the unique characteristics of solitude, naturalness, and biodiversity that plaintiffs' members enjoy most about excursions in the southern California forests.  The forest plans fail to adopt adequate standards for addressing impacts of the plans and activities authorized by the plans on wildlife and native vegetation, thus diminishing the enjoyment plaintiffs' members derive from the national forests.

19.     The Forest Service's failure to comply with NEPA has injured plaintiffs and their members by depriving them of information pertaining to the southern California forest plans to which they are entitled under NEPA, including information pertaining to the forest plans' impacts on environmental resources in the planning area, reasonable alternatives to the proposed action, and mitigation measures available to address adverse environmental impacts; by depriving plaintiffs and their members of a meaningful opportunity to comment on the missing information; and by denying them the procedural safeguards embodied in NEPA to ensure that government agencies carefully

consider the environmental consequences of a proposed action, environmentally superior alternatives to that action, and appropriate mitigation measures prior to granting any project approval.

20.    Plaintiffs were actively involved throughout the rulemaking process for the Forest Service's revision of the forest plans for the four southern California national forests.  Plaintiffs participated in scoping meetings, submitted scoping comments to the Forest Service, and also submitted comments on the draft environmental impact statement for the revised forest plans. Plaintiffs consistently raised concerns about the Forest Service's preferred alternative and its impacts on the environment, including wildlife and biodiversity, and on the public, including environmental justice communities.  During the rulemaking process, plaintiffs developed and submitted to the Forest Service a comprehensive alternative to the Forest Service's proposed forest plans, referred to as the "Conservation Alternative."  Among other important provisions, the Conservation Alternative proposed protecting substantially more acres of roadless areas as wilderness and included specific, binding standards for managing adverse impacts on environmental resources throughout the forests. For example, the Conservation Alternative included standards for managing adverse impacts on forest resources caused by fuels reduction activities, standards mitigating impacts of the forest plans on endangered, threatened, candidate, and sensitive species, and standards for outreach and education.  After the Forest Service issued the FEIS and records of decision, plaintiffs administratively appealed the forest plans to the Chief of the Forest Service.

21.    Plaintiffs' injuries will be redressed by the relief sought herein because the forest plans would be set aside and a new analysis of the proposed forest plans pursuant to NEPA may result in improved plans that better protect environmental resources, increase the number and size of areas protected from roads, off-road vehicles, and other environmentally damaging activities, adopt mitigation for fuels reduction activities, and increase the amount and quality of lands recommended for designation as wilderness under the Wilderness Act.  All such relief would improve plaintiffs' opportunities for enjoying the Southern California national forests, including its remaining roadless areas, in the future.

22.    Plaintiffs have no adequate remedy at law to address any of the foregoing injuries to their interests.

23.    Defendant United States Department of Agriculture is a department of the United States Executive Branch.

24.    Defendant Edward Schafer is the Secretary of the United States Department of Agriculture.  Defendant Schafer is sued in his official capacity.

25.    Defendant United States Forest Service is an administrative agency within the Department of Agriculture charged with administration of the National Forest System.

26.    Defendant Abigail Kimbell is the Chief of the United States Forest Service.  The Forest Service chief is responsible for deciding administrative appeals of Forest Service decisions. Defendant Kimbell is sued in her official capacity.

27.    Defendant Randy Moore is the Regional Forester for the Pacific Southwest Region of the Forest Service.  The Regional Forester signed the records of decisions at issue in this action. Defendant Moore is sued in his official capacity.

## NATIONAL ENVIRONMENTAL POLICY ACT

28.    The National Environmental Policy Act is the "basic national charter for protection of the environment."  40 C.F.R. § 1500.1(a); *see also* 42 U.S.C. § 4331(a) (declaring it a national policy for all federal agencies to "create and maintain conditions under which man and nature can exist in productive harmony").

29.    NEPA is procedural in nature, creating a democratic decision-making process designed "to help public officials make decisions that are based on understanding of environmental consequences" and to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b)-(c).

30.    In short, NEPA requires that all federal agencies consider environmental factors in the course of agency decision-making through preparation of an environmental impact report (commonly referred to as an "EIS") before executing any "major federal action significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

31.    To fulfill its purpose, an EIS must "provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives

1   which would avoid or minimize adverse impacts or enhance the quality of the human environment."

2   40 C.F.R. § 1502.1; *see also* 42 U.S.C. § 4332(2)(C).

3       32.    NEPA and its implementing regulations require that an EIS include a detailed

4   discussion of the environmental impacts of a project, including an analysis of impacts of the

5   proposed action and all of the reasonable alternatives; any adverse environmental effects that cannot

6   be avoided should the proposal be implemented; the relationship between short-term uses of man's

7   environment and the maintenance and enhancement of long-term productivity; and any irreversible

8   or irretrievable commitments of resources that would be involved in the proposal should it be

9   implemented.  *See* 42 U.S.C. § 4332(2)(C); *see also* 40 C.F.R. § 1502.16.

10       33.    NEPA further requires that a federal agency provide for the participation of other

11   relevant federal agencies and the public in development of an EIS.  *See* 40 C.F.R. § 1503.1.  An

12   agency must assess and consider public comments related to a draft EIS and respond to those

13   comments by either modifying the alternatives included in the proposal or the agency's analysis or

14   explaining in the final EIS why the comments do not warrant further agency response.  *Id.* § 1503.4.

15   **THE NATIONAL FOREST MANAGEMENT ACT**

16       34.    Congress adopted the National Forest Management Act of 1976 to reform Forest

17   Service management of national forests and to improve protections for non-timber resources,

18   including wildlife, plants, water, and soils.  The NFMA requires that the Forest Service develop,

19   maintain, and revise forest plans for each unit of the National Forest System.  16 U.S.C. § 1604(a).

20   The Act requires that the Forest Service manage the forests to ensure that site-specific projects are

21   consistent with the NFMA and the governing forest plan.  *Id.* § 1604(i).  The Forest Service must

22   also revise forest plans at least every fifteen years.  *Id.* § 1604(f).

23       35.    The NFMA requires that the Forest Service promulgate regulations implementing the

24   Act addressing a variety of forest resource issues.  For example, the Act requires that regulations

25   implementing the NFMA specify guidelines that provide for diversity of plant and animal

26   communities in each national forest.  *Id.* § 1604(g)(3)(B).

27       36.    In 1982, the Forest Service promulgated regulations for implementing the NFMA

28   ("1982 Regulations") that include detailed requirements for the content of forest plans.  The 1982

1   Regulations require that forest plans include:  (1) a summary of the management situation, (2)

2   multiple-use goals and objectives including a description of the desired future condition of the forest,

3   (3) multiple-use "prescriptions and associated standards and guidelines" for each management area,

4   and (4) monitoring and evaluation requirements for periodic evaluation of the effects of management

5   practices.  Former 36 C.F.R. § 219.11 (1982).[1]

6          37.     The 1982 Regulations set forth additional requirements regarding a variety of

7   resources, including wilderness, wildlife, vegetation, recreation, minerals, water, and soil.  See *id*.

8   §§ 219.18-.25.  The 1982 Regulations also require that the Forest Service evaluate roadless areas for

9   recommendation to Congress for designation as wilderness areas during the forest planning process.

10  *Id*. § 219.17(a).  With respect to plant and animal communities, the 1982 Regulations require that

11  forest planning provide for diversity of plant and animal communities and also manage fish and

12  wildlife habitat to maintain viable populations of existing species in the forests.  *Id*. §§ 219.26,

13  219.19.

14         38.     The NFMA requires that the regulations promulgated to aid in its proper

15  implementation must "specify procedures to insure that land management plans are prepared in

16  accordance with [NEPA]."  16 U.S.C. § 1604(g)(1).  Accordingly, the 1982 Regulations address the

17  Forest Service's duty to comply with NEPA during the preparation and revision of its forest plans.

18  1982 Regs. § 219.12(a).  Pursuant to its regulations, the Forest Service must identify and evaluate

19  public issues, management concerns, and resource use and development opportunities identified

20  throughout the forest planning process; prepare criteria to guide the planning process that apply to

21  the design, formulation, and evaluation of alternatives; obtain and keep current inventory data for

22  planning and managing the forest resources; analyze the management situation through analyses of

23  benchmarks defining various issues, such as the minimum level of management needed to maintain

24  and protect the forest; formulate, estimate effects of, and evaluate management alternatives; and

25  adopt monitoring and evaluation requirements.  *Id*. § 219.12.

26

27  _____

[1] The 1982 Regulations have been superseded by a revised version of NFMA regulations.  36 C.F.R.
Part 219 (April 21, 2008).  However, the southern California forest plans were revised pursuant to
28  the 1982 regulations, so references to relevant provisions of that version of the NFMA planning
regulations are given throughout this complaint, cited as "1982 Regs. § 219.[  ]."

39.    With respect to the analysis of management alternatives, the Forest Service must formulate a "broad range of reasonable alternatives according to NEPA procedures," including a "no action" alternative, that reflect "the full range of major commodity and environmental resource uses and values that could be produced from the forest."  *Id*. § 219.12(f).   The "primary goal" in formulating alternatives is to "provide an adequate basis for identifying the alternative that comes nearest to maximizing net public benefits . . . "  *Id*.  The 1982 Regulations require that alternatives considered by the Forest Service "shall provide different ways to address and respond to the major public issues, management concerns, and resource opportunities identified during the planning process."  *Id*. § 219.12(f)(4).  In so doing, each alternative must state at least:  the condition and uses that will result from long-term application of the alternative; the goods and services to be produced together with associated costs and benefits; resource management standards and guidelines; and the purpose of the management direction proposed.  *Id*. § 219.12(f)(9).

40.    In considering the management alternatives, the 1982 Regulations reinforce the Forest Service's duty to "estimate" and "compare" the physical, biological, economic, and social effects of implementing each alternative considered in the EIS, including among other things the "significant resource tradeoffs and opportunity costs associated with achieving alternative resource objectives."  *Id*. § 219.12(g).  Finally, the Forest Service must then evaluate the significant physical, biological, economic, and social effects of each management alternative, including a "comparative analysis of the aggregate effects of the management alternatives" that compares social and economic impacts as well as the overall "protection and enhancement of environmental resources."  *Id*. § 219.12(h).

## FACTUAL BACKGROUND

### Southern California's National Forests

41.    Southern California hosts four national forests covering over 3.5 million acres of public land:  the Los Padres, Angeles, San Bernardino, and Cleveland national forests.  The southern California forests contain an impressively diverse landscape that includes the world-renowned Big Sur coastline south of Monterey Bay, as well as snow-covered mountain peaks in the San Gabriel, San Bernardino, and San Jacinto mountains farther south.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    11

1    42.    The national forests in southern California encompass mountain ranges with

2  extensive coastal and desert scrublands, montane meadows, and hardwood and conifer forests;

3  portions of the San Joaquin Valley; and the interior Mojave and Colorado deserts.  Unlike other

4  national forests in California and the Pacific Northwest, the Forest Service has determined that there

5  are no areas suitable for timber sale production in the southern California national forests.  These

6  forests instead contain a wealth of plant community types, many of which are sensitive, rare, and

7  unique.  The most dominant vegetative communities in the southern California national forests

8  include hardwood forests and woodlands; conifer and conifer-hardwood forests; chaparral, coastal

9  sage scrub, and desert scrub; and meadows, grasslands, and herbaceous habitat types.

10    43.    The southern California national forests are vital refugia for native plant and animal

11  species that are affected by intense urban development on surrounding private lands throughout

12  southern California.  The southern California forests are part of the south coast ecological region.

13  This region provides habitat that is critical to the survival and well-being of species for nearly every

14  taxonomic group, including plants, invertebrates, birds, mammals, and reptiles.

15    44.    The southern California national forests contain over one million acres of designated

16  wilderness that provide important habitat for plant and animal communities.  Over half of the

17  forests' wilderness is concentrated in the Los Padres National Forest.

18    45.    There are approximately 1.1 million acres of inventoried roadless area in the southern

19  California national forests that are eligible for designation as wilderness.  Approximately 10,128

20  miles of roads exist in the southern California national forests.  The existence of such an extensive

21  roads system means that protection of the remaining roadless areas is of paramount importance to

22  the region's plant and animal communities.

23    46.    The southern California national forests are an important source of clean water for

24  consumption, agriculture, and industry for many communities in southern California.

25    47.    The southern California national forests are immensely popular destinations for

26  millions of visitors who come each year to hike, camp, picnic, fish, observe wildlife, rock climb,

27  bicycle, horseback ride, and engage in numerous other outdoor activities.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                12

48.     The southern California national forests and the biodiversity contained therein are under intense pressure from a variety of activities, including motorized recreation, due to their proximity to some of the most heavily populated urban centers in the country.  Approximately 20 million people live in the Los Angeles and San Diego metropolitan areas.  The region is expected to grow to 35 million people by 2020.

49.     The Forest Service has determined that the four major threats to national forests and grasslands are fire and the build up of fuels in the forests, invasive species, loss of open space, and unmanaged recreation.  All of these threats affect the southern California national forests.

### Prior Forest Planning for the Southern California National Forests

50.     The Forest Service promulgated forest plans for each of the four southern California national forests between 1986 and 1989.  These plans adopted weak and ambiguous standards and guidelines that led to inconsistent management among the four national forests.

51.     Between 1995 and 1999, the four southern California national forests initiated a large scale analysis of ongoing activities and their effects on species and habitat.  In 1999, the Forest Service published the Southern California Mountains and Foothills Assessment ("SCMFA"), a comprehensive habitat conservation assessment that analyzed trends of ecological systems and species in the southern California national forests.  An interdisciplinary team of Forest Service biologists used the SCMFA to review the forest plans and their ability to meet the needs of threatened, endangered, and sensitive species.  The conclusions of the interdisciplinary team were published in  the Province Forest Plan Monitoring and Evaluation Report ("M&E Report").  The M&E Report found that the southern California forest plans do not adequately protect threatened, endangered, and sensitive species or provide direction necessary to sustain particular ecological communities.  The M&E Report recommended that the Forest Service revise the southern California national forest plans.

52.     In 1998, the Center filed suit against the Forest Service, alleging violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, in connection with the Forest Service's failure to consult with federal agencies responsible for managing threatened and endangered species concerning the impacts of the forest plans on such species.

53.    In 2000, the parties settled the lawsuit.  The settlement required that the Forest Service consult with the United States Fish and Wildlife Service as to the impacts of the forest plans on threatened and endangered species, adopted certain interim measures to protect such species, and required that the Forest Service revise the forest plans for the four Southern California national forests.

### Revised Forest Plans for the Southern California Forests

54.    The Forest Service adopted revised forest plans for the four southern California national forests in September 2005.

55.    The revised forest plans contain three parts, some of which are common to all of the national forests and some of which are forest specific.  Part One, which applies to all four forests, is described by the revised forest plans as the "vision" for the national forests of Southern California. Part One describes the Forest Service's goals, the unique characteristics of the national forests, the desired conditions of the forests, and the indicators that will be used to monitor and evaluate progress towards accomplishing the desired conditions of the forests.  The vision, goals, and desired conditions include ecosystem health and biodiversity, community protection from wildfire, the restoration of forest health, reversing the trend of an increasing loss of natural resources due to invasive species, and quality drinking water.

56.    Part Two consists of four separate documents, each specific to one of the four national forests.  Part Two concerns the forest-specific strategies and includes descriptions of objectives, program emphasis, and potential resource management strategies.  Part Two describes the various land use zones for each national forest.  The realm of possible land use zones includes developed area interface (*i.e.*, areas adjacent to communities with higher levels of human use), back country (motorized and non-motorized), critical biological, wilderness, and special designation overlays, such as wild and scenic rivers and research natural areas.

57.    Part Three contains the "design criteria" that apply to all four forests and consist of the rules that forest managers must adhere to and use to achieve the desired conditions identified in the forest plans.  Part Three is divided into two components.  The first component of Part Three includes standards and guidelines.  The "standards" are the fundamental requirements that define the

1  parameters for all activities that occur in national forests and can only be changed through

2  amendment of the forest plan.  The second component of Part Three contains the laws, policies, and

3  other direction that may be necessary for land managers to consult during the course of

4  implementing the forest plans.

5                              **PROCEDURAL HISTORY**

6         58.     On September 24, 2001, the Forest Service published a notice of intent to prepare an

7  EIS and to revise the forest plans for the four southern California national forests.  *See* 66 Fed. Reg.

8  48856 (Sept. 24, 2001).  In the notice, the Forest Service recognized a compelling need to revise the

9  forest plans:  to establish new or revised management direction for all activities and uses of the

10 forests based on the findings of the SCMFA and the M&E Report; to address conditions that have

11 changed since the Forest Service adopted the original plans; to comply with the NFMA requirement

12 to revise plans every fifteen years; to bring management direction up-to-date with increased

13 population, demand for recreation, and corresponding resource and use conflicts; to more adequately

14 protect plant and animal species and their habitat; to more clearly emphasize and direct the use of

15 prescribed fire to restore ecosystem functions; and to incorporate other new scientific information

16 into current management of the forests.

17        59.     Plaintiffs submitted comments in response to the scoping notice and participated in

18 public meetings held by the Forest Service.  Plaintiffs developed and, on April 1, 2002, submitted to

19 the Forest Service a comprehensive Conservation Alternative.  The Conservation Alternative

20 addressed the major management issues affecting the southern California national forest, including

21 but not limited to the management of vegetation, watersheds, fire, recreation, wilderness, and

22 outreach and education.  For each management issue, the Conservation Alternative described the

23 management issue, the area affected, the desired condition, and the management objectives and also

24 established binding standards and guidelines for all of the various activities affecting each resource.

25        60.     The Forest Service circulated a draft EIS ("DEIS") for public comment in May 2004.

26 Although the DEIS purported to consider an alternative based on the Conservation Alternative,

27 Alternative Six, the DEIS altered and deleted important aspects of the Conservation Alternative.  For

28 example, Alternative Six in the DEIS did not include the alternative standards described in the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    15

Conservation Alternative because the DEIS considered only one set of standards (described as "design criteria") that was exactly the same in each of the alternatives. The DEIS failed to provide any coherent basis for not analyzing the standards proposed in the Conservation Alternative.

61.    Plaintiffs and numerous other organizations, state and federal agencies, and individuals submitted comments on the DEIS. Plaintiffs' comments objected to the forest plans and the Forest Service's inadequate analysis of the environmental effects of the forest plans in the DEIS; its decision to recommend a bare fraction of the eligible roadless areas for designation as wilderness; its failure to adopt standards and guidelines for important resources, including sensitive species of vegetation and wildlife; its failure to consider adequately the forest plans' impacts on environmental justice communities; and its failure to consider legitimate alternatives to the proposed action, in addition to numerous other deficiencies with the FEIS and forest plans.

62.    On September 20, 2005, the Forest Service Regional Forester for the Pacific Southwest Region of the National Forest System issued the FEIS, forest plans, and four records of decision for each national forest. On April 3, 2006, the Forest Service reissued the records of decision because the agency had inadvertently omitted information from the FEIS.

63.    On July 20, 2006, Plaintiffs administratively appealed the FEIS and records of decision to the Chief of the Forest Service. Those appeals were denied in four separate decisions issued on May 30, 2008.

**FIRST CLAIM FOR RELIEF**

(Failure to Consider a Reasonable Range of Alternatives in Violation of NEPA and APA)

64.    Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

65.    NEPA requires preparation of an EIS for any "major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

66.    The alternatives analysis NEPA mandates is the "heart of the environmental impact statement." 40 C.F.R. § 1502.14. In the alternatives section of an EIS, federal agencies must:

      a.    Rigorously explore and objectively evaluate all reasonable alternatives, and, for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF      16

b. Devote substantial treatment to each alternative considered in detail including the proposed action so that reviewers may evaluate their comparative merits.

c. Include reasonable alternatives not within the jurisdiction of the lead agency.

d. Include the alternative of no action.

e. Identify the agency's preferred alternative or alternatives, if one or more exists, in the draft statement and identify such alternative in the final statement unless another law prohibits the expression of such a preference.

f. Include appropriate mitigation measures not already included in the proposed action or alternatives.

*Id.*

67.    As repeatedly emphasized by the Ninth Circuit Court of Appeals, the "existence of a viable but unexamined alternative renders an environmental impact statement inadequate." *Oregon Natural Desert Ass'n v. BLM*, 531 F.3d 1114, 1121 (9th Cir. 2008) (quoting *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (quoting *Morongo Band of Mission Indians v. Fed. Aviation Admin.*, 161 F.3d 569, 575 (9th Cir. 1998))).

68.    The FEIS for the four revised southern California forest plans violates NEPA and its implementing regulations with respect to its analysis of alternatives to the proposed action.  The FEIS does not "[r]igorously explore and objectively evaluate all reasonable alternatives" to the proposed action, 40 C.F.R. § 1502.14, because the FEIS fails to assess alternative ways of addressing many of the important issues that must be resolved by the forest plans.  For example, one of the fundamental decisions made by a forest plan for the long-term management of a national forest is the identification of forest-wide standards and guidelines that establish parameters for all of the various activities that may take place in the national forests.  *See* 16 U.S.C. § 1604(g); 1982 Regs. § 219.11(c).  Yet, the FEIS' alternatives studies only one set of identical management standards, many of which are completely inadequate for protecting and/or enhancing environmental resources that exist in each of the four southern California national forests.

69.    Plaintiffs jointly submitted to the Forest Service a Conservation Alternative that described numerous alternative standards that should have been considered and analyzed in the draft

1   EIS.  The Conservation Alternative, for example, described a comprehensive plan for managing

2   adverse impacts to sensitive species of vegetation caused by fuels reduction activities designed to

3   reduce the risk of wildfires.  Yet, these standards were never presented to the public as a possible

4   alternative or studied in detail.  Many of the other standards described in the Conservation

5   Alternative were either ignored or arbitrarily excluded from detailed study in the FEIS.

6        70.    Another critical decision made in a forest plan is the establishment of monitoring and

7   evaluation requirements for implementation of the forest plans.  *See* 16 U.S.C. § 1604(g)(3)(C);

8   1982 Regs. § 219.11(d).  Monitoring is an important issue for endangered, threatened, proposed,

9   candidate, and sensitive plant and animal species effected by activities that are authorized and

10  managed by the forest plans.  Yet each alternative in the FEIS included an identical plan for

11  monitoring and evaluation.

12       71.    Likewise, forest plans must select management indicator species whose population

13  trends must be monitored as indicators of the overall health of species and habitat types and to

14  ensure diversity of plant and animal communities.  *Id*. § 219.19(a); *see also* 16 U.S.C.

15  § 1604(g)(3)(B).  Plaintiffs' Conservation Alternative proposed a list of management indicator

16  species that identified more appropriate species as indicators of habitat types and forest health.  This

17  list of management indicator species would have been more protective of the environment because

18  monitoring the population trends of such species would have produced more accurate information

19  about the status of the represented forest ecosystems.  Yet the Forest Service's FEIS does not present

20  this proposed list of management indicator species to the public, study it in detail, nor analyze the

21  environmental consequences of such an alternative approach to complying with the NFMA's

22  requirement to ensure diversity of plant and animal communities.  Instead, each of the alternatives

23  studied in the FEIS analyzed only one, identical list of management indicator species.

24       72.    The Forest Service arbitrarily eliminated other important issues from detailed study in

25  the alternatives section of the FEIS, such as proposed standards for improving involvement in

26  environmental decision-making by environmental justice communities and standards related to

27  reducing the impacts of global warming on forest resources.  The Forest Service claimed that it need

28  not study these issues in detail because they are outside the scope of decisions made in forest plans

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                      18

1   or the responsibility of other agencies.  However, consideration of such issues falls well within the

2   broad purpose and need for revising the forest plans, which includes the objective to describe "up-to-

3   date strategic direction" for the southern California national forests to address various public

4   concerns including, for example, concerns about human access and concerns that the number of

5   species threatened with extinction has increased and needs to be reduced.  In addition, federal

6   agencies are required to consider all reasonable alternatives even if they are not within the

7   jurisdiction of the lead agency.  *See* 40 C.F.R. § 1502.14.

8         73.    The Forest Service refused to consider reasonable, feasible alternative ways of

9   addressing important decisions that the Forest Service must make when it revises a forest plan under

10  the NFMA.  The Forest Service also failed to provide any coherent rationale for eliminating

11  alternative standards and guidelines proposed by the public, including those described in the

12  Conservation Alternative, from detailed study in the FEIS.

13        74.    The Forest Service's failure to rigorously explore and objectively evaluate a

14  reasonable range of alternatives in the manner described above violates NEPA and its implementing

15  regulations and is arbitrary, capricious, an abuse of discretion, contrary to law, and also without

16  observance of procedure required by law, contrary to the APA, 5 U.S.C. § 706(2)(A), (E).

17                          **SECOND CLAIM FOR RELIEF**

18  (Failure to Consider Adequately the Impacts of the Forest Plans' Re-zoning of Roadless Areas and
    Recommending Very Few Areas for Wilderness Protection in Violation of NEPA and APA)

19

20        75.    Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in

21  the preceding paragraphs.

22        76.    The Forest Service must evaluate roadless areas during the forest planning process to

23  determine whether to recommend that Congress designate them as wilderness areas.  1982 Regs.

24  § 219.17(a).  The Wilderness Act, 16 U.S.C. §§ 1131-1136, defines wilderness as:

25        an area where the earth and its community of life are untrammeled by man, where
          man himself is a visitor who does not remain . . . [and] an area of undeveloped

26        Federal land retaining its primeval character and influence, without permanent
          improvements or human habitation, which is protected and managed so as to

27        preserve its natural conditions and which (1) generally appears to have been
          affected primarily by the forces of nature, with the imprint of man's work

28        substantially unnoticeable; (2) has outstanding opportunities for solitude or a

primitive and unconfined type of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value."

*Id.* § 1131(c).

77.    The Forest Service's evaluation of roadless areas must consider a variety of issues related to the value of potential wilderness areas, including the diversity of natural plant and animal communities of the forest planning area "and the effects of such changes on the values for which wilderness areas were created."  1982 Regs. § 219.17(a)(2).  The Forest Service Handbook further explains that the Forest Service must describe "the potential effects of wilderness and nonwilderness recommendations for each potential wilderness area," including a discussion of "the impact on the area if it were managed as nonwilderness."  Forest Service Handbook 1909.12, Ch. 74, p.25.

78.    NEPA requires that EIS's analyze the environmental effects of a proposed action and alternatives to the proposed action.  *See* 42 U.S.C. § 4332(C); *see also* 40 C.F.R. § 1502.16.  The effects that an EIS must evaluate include "direct effects" which are "caused by the action and occur at the same time and place," as well as "indirect effects which . . . are later in time or farther removed in distance, but are still reasonably foreseeable."  40 C.F.R. § 1508.8.  An EIS must also consider potential cumulative effects, which are the impacts "on the environment that result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or Non-Federal) or person undertakes such other actions."  *Id.* § 1508.7.  An EIS must demonstrate that an agency took a "hard look" at all of the environmental effects.  *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 963 (9th Cir. 2002), quoting *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374 (1989).

79.    An EIS also must analyze mitigation measures to address any adverse environmental impacts identified in the EIS.  40 C.F.R. § 1502.16; *see also id*. § 1502.14.  The omission of a "reasonably complete discussion of possible mitigation measures would undermine the action-enforcing function of NEPA," because without such a discussion, "neither the agency nor other interested groups and individuals can properly evaluate the severity of the adverse effects."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352 (1989).  The importance of

1    analyzing mitigation measures is reinforced by the NFMA, which itself requires that forest plans

2    contain "standards and guidelines" for each area including "proposed and probable management

3    practices."  1982 Regs. § 219.11(c).

4        80.    Federal agencies must "integrate the NEPA process with other planning at the earliest

5    possible time to insure that planning and decisions reflect environmental values, to avoid delays later

6    in the process, and to head off potential conflicts."  40 C.F.R. § 1501.2.

7        81.    The forest plans reclassify over 90 percent of roadless areas in the national forests to

8    land use zones that are managed for development, road-building, and other activities that could

9    prevent these areas from being designated as wilderness in the future.  The Forest Service failed to

10    analyze adequately and take a hard look at the impact of its decision to manage these particular areas

11    for uses other than wilderness and not to recommend that the vast majority of eligible roadless areas

12    be designated as wilderness.  The FEIS also fails to analyze adequately the broader impact of the

13    zoning decisions made in the forest plans on wilderness values throughout the national forests.

14        82.    The FEIS fails to present an adequate explanation of the Forest Service's rationale for

15    its decision to recommend for designation as wilderness only a fraction of the roadless areas that are

16    potentially eligible as wilderness, including many areas recommended by the public for wilderness

17    designation.  This prevents informed decision-making by the Forest Service and the public and

18    violates NEPA's public disclosure requirements.

19        83.    The Forest Service also failed to analyze adequately and take a hard look at the

20    impact that recommending a bare fraction of eligible roadless areas for designation as wilderness

21    will have on minority and low-income communities, which face cultural, financial, and linguistic

22    obstacles to accessing remote wilderness areas.  The Forest Service underestimates the impact of not

23    designating more wilderness on environmental justice communities and fails to analyze adequately

24    measures to increase access to wilderness areas, and the national forests generally, by environmental

25    justice communities.

26        84.    The Forest Service's failure to analyze adequately and take a hard look at the impacts

27    of recommending so few roadless areas for designation as wilderness and instead reclassifying most

28    of those areas to land use zones that anticipate road building and other development and mechanized

activities that could prevent them from being designated as wilderness violates NEPA and its implementing regulations and is arbitrary, capricious, an abuse of discretion, contrary to law, and also without observance of procedure required by law, contrary to the APA, 5 U.S.C. § 706(2)(A), (E).

### THIRD CLAIM FOR RELIEF

(Failure to Consider Adequately the Impacts of the Forest Plans on Vegetation and Biodiversity in Violation of NEPA and APA)

85.     Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

86.     The FEIS for the revised forest plans fails to analyze adequately or take a hard look at all of the forest plans' likely impacts on biodiversity, particularly sensitive species of vegetation and wildlife.  For example, the FEIS fails to analyze adequately or take a hard look at the potential effects of the system of illegal or "unclassified" roads and trails that are a major management concern in the southern California forests.  The FEIS fails to analyze adequately measures to reduce the existing system of illegal roads and motorized trails and their impacts on plant communities and wildlife and fails to disclose information concerning the extent of illegal motorized trails in the forests.

87.     The FEIS similarly fails to analyze adequately the effects of the Forest Service's decision to expand off-road vehicle use on important and/or sensitive vegetative communities in the southern California forests, such as coastal sage scrub and chaparral.  The forest plans' allocation of national forest lands to various land use zones allows the expansion of off-road vehicle use.  Yet, the "Effects on Vegetation" section of the FEIS does not even mention the impacts of expanding off-road vehicle use in the forests, and elsewhere the FEIS only lists in general terms potential adverse effects of off-road recreation on plants.

88.     Although Appendix D of the forest plans, entitled "Adaptive Mitigation for Recreation Uses," generically outlines a mechanism for resolving conflicts between all recreational uses and "sensitive" resources, the measures contained in Appendix D fail to address management issues unique to various specific vegetative communities that exist throughout the national forests

1  and do not address adequately significant recreational management issues, such as the proliferation

2  of illegal off-road vehicle trails.  The FEIS itself omits any discussion of Appendix D in its analysis

3  of impacts on vegetation and does not analyze adequately whether the measures will be effective at

4  mitigating adverse impacts to various plant communities, particularly sensitive species.

5         89.    The FEIS similarly fails to analyze adequately or take a hard look at the effects of

6  planned fuels reduction activities announced in the forest plans on vegetation and biodiversity.

7  These activities will occur in virtually every vegetative community that exists in the forests,

8  including mixed conifer forests, chaparral, and coastal sage scrub, and will impact numerous species

9  of wildlife.  Although fuels reduction activities are necessary to reduce fire risk in the southern

10  California national forests, adverse impacts of fuels reduction activities can and should be mitigated

11  through avoidance and/or restoration activities.  The FEIS does not analyze adequately mitigation

12  measures to address adverse impacts of the planned fuels reduction activities, particularly on

13  sensitive plant and wildlife communities.

14         90.    In addition, the FEIS fails to analyze adequately and disclose information concerning

15  the potential adverse impacts to the federally endangered California condor from increased oil and

16  gas development.

17         91.    The Forest Service's failure to analyze adequately and take a hard look at the

18  environmental impacts of the forest plans in the manner described above violates NEPA and its

19  implementing regulations and is arbitrary, capricious, an abuse of discretion, contrary to law, and

20  also without observance of procedure required by law, contrary to the APA, 5 U.S.C. § 706(2)(A),

21  (E).

22                        **REQUEST FOR RELIEF**

23  WHEREFORE, plaintiffs respectfully request that the Court:

24         A.    Hold unlawful and set aside the FEIS, four records of decision approving the revised

25  southern California forest plans and FEIS, and the revised forest plans, pursuant to the

26  Administrative Procedure Act, 5 U.S.C. § 706;

27         B.    Find and declare that the Forest Service violated the National Environmental Policy

28  Act and its implementing regulations and the Administrative Procedure Act in promulgating the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                        23

1  revised southern California forest plans and that the FEIS is legally inadequate;

2      C.    Enjoin the Forest Service from implementing the revised southern California forest

3  plans and order the Forest Service to revise the FEIS and forest plans as expeditiously as possible;

4      D.    Award plaintiffs their costs of litigation, including reasonable attorneys' fees, costs,

5  and expenses, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6      E.    Grant plaintiffs such additional relief as the Court may deem just and proper.

7

8  DATED: August 14, 2008                Respectfully submitted,

9

10                                        _____
                                          ERIN M. TOBIN

11                                        TRENT W. ORR

12                                        *Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    24